UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
CURATED WORKS INC. d/b/a CURATED,                    :

        Plaintiff,                                      :
                                                                                REPORT AND
   -against-                                        :              RECOMMENDATION

DEAL.COM, INC. a/k/a DEAL.COM GLOBAL,       :              19 Civ. 11509 (LAK) (GWG)
INC. d/b/a CURATED.COM,
                                                                      :

       Defendant.                                     :
----------------------------------------------------------------X

**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**

Plaintiff Curated Works Inc. brought this suit against defendant Deal.com alleging

trademark infringement under 15 U.S.C. § 1114(1), false designation of origin and false

description under 15 U.S.C. § 1125(a)(1)(A), cybersquatting under 15 U.S.C. § 1125(d)(1)(A),

and common law unfair competition.  Before the Court is defendant's partial motion to dismiss

Curated Works' third cause of action for cybersquatting.[1]  For the reasons that follow,

defendant's motion should be granted.

I. FACTS

For the purposes of this motion, we accept "all factual allegations in the complaint as true

and [draw] all reasonable inferences in the plaintiffs' favor."  Ganino v. Citizens Utilities Co.,

---

[1]  See Complaint, filed Dec. 16, 2019 (Docket # 1) (Compl.); Motion to Dismiss Third
Cause of Action in Plaintiff's Compl., filed Jan. 30, 2020 (Docket # 9) ("Mot."); Memorandum
of Law in Support of Mot., filed Jan. 30, 2019 (Docket # 10) ("Def. Mem."); Declaration of Joel
G. MacMull in Opposition to Mot., filed Feb. 14, 2020 (Docket # 15); Memorandum of Law in
Opposition to Mot., filed Feb. 14, 2020 (Docket # 16) ("Pl. Mem."); Reply Memorandum of Law
in Support of Mot., filed Feb. 20, 2020 (Docket # 18) ("Reply").

228 F.3d 154, 161 (2d Cir. 2000) (internal citation omitted).  Curated Works is a company that

matches consumers with agencies and other service providers in the creative, technical, and

professional service fields via its internet platform.  Compl. ¶ 1.  Since 2016, Curated Works has

done business under the name "Curated" through its website, www.curated.io, as well as its

@curated Twitter handle and associated Facebook and Instagram accounts.  Id. ¶ 18.  On June

20, 2016, Curated Works applied to the United States Patent and Trademark Office ("PTO") to

register "Curated" as a standard character mark in International Class 42 with the description:

"Providing a web hosting platform for matching consumers with agencies and freelance service

providers in the creative, technical, and professional fields."  Id. ¶ 20.  The mark was registered

as U.S. Registration No. 5,835,133 on August 13, 2019.  Id. ¶ 21.  On October 25, 2016, Curated

Works applied to the PTO to register "Curated" as a standard character mark in International

Class 42 with the description: "Providing temporary use of a web-based software application for

identifying and defining the scope and components of projects and comparing project proposals."

Id. ¶ 22.  The mark was registered as U.S. Registration No. 5,217,483 on June 6, 2017.  Id. ¶ 23.

        Defendant operates www.curated.com (the "Curated URL") through which it matches

customers of expensive consumer goods and services with niche-market experts.  Id. ¶ 25.

Defendant has operated the Curated URL since February 2019, after defendant acquired the

Curated URL from a third-party in 2018.  Id. ¶ 28.  In April 2019, defendant filed three

applications for trademarks with the PTO, two of which incorporate the term "Curate" and one of

which was for the mark "Curated" (U.S. Serial No. 88374513).  Id. ¶ 31.  All of defendant's

applications were initially refused by the PTO on June 20, 2019.  Id. ¶ 32.  One of the reasons the

PTO refused defendant's application for the "Curated" mark was because of Curated Works'

prior-filed, then-pending application for the Curated mark (U.S. Serial No. 87077697).  Id. ¶ 33.

Curated Works alleges the Curated URL infringes on its trademark rights.  Specifically, Curated Works alleges defendant knew the Curated URL infringed on Curated Works' trademark rights, id. ¶¶ 5, 27, and that defendant has earned substantial revenue from the sale of goods and services on the Curated URL, id. ¶ 41.  Curated Works alleges that defendant has "willfully and intentionally," id. ¶ 77, operated the Curated URL with a "bad faith intent to profit from its registration and use of the curated.com domain name," id. ¶ 76.  Curated Works alleges that defendant has used Search Engine Optimization ("SEO") practices to obtain the top Google search results for the Curated URL, id. ¶ 38, and that internet users are now routinely referred to the Curated URL rather than www.curated.io, id. ¶ 39, which has resulted in injury to Curated Works' goodwill and reputation, id. ¶ 78.

II.  LAW GOVERNING MOTIONS TO DISMISS

A defendant may move to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) where the plaintiff "fail[s] to state a claim upon which relief can be granted."  To survive such a motion, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotation marks omitted) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  As the Supreme Court noted in Iqbal,

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.

Id. (citations omitted).  "[W]here the well-pleaded facts do not permit the court to infer more

than the mere possibility of misconduct," a complaint is insufficient under Federal Rule of Civil

Procedure 8(a) because it has merely "alleged — but it has not shown — that the pleader is

entitled to relief." Id. at 679 (brackets and internal quotation marks omitted) (quoting Fed. R.

Civ. P. 8(a)(2)).

III.  DISCUSSION

      Defendant moves to dismiss Curated Works' third cause of action, which alleges

"Federal Cybersquatting" in violation of 15 U.S.C. § 1125(d)(1)(A) ("Section 1125(d)(1)(A)").

See Mot.  Under, Section 1125(d)(1)(A), also known as the Anticybersquatting Consumer

Protection Act ("ACPA"),

> A person shall be liable in a civil action by the owner of a mark, including a personal
> name which is protected as a mark under this section, if, without regard to the goods or
> services of the parties, that person —
> (i) has a bad faith intent to profit from that mark, including a personal name which is
> protected as a mark under this section; and
> (ii) registers, traffics in, or uses a domain name that —
> (I) in the case of a mark that is distinctive at the time of registration of the domain name,
> is identical or confusingly similar to that mark;
> (II) in the case of a famous mark that is famous at the time of registration of the domain
> name, is identical or confusingly similar to or dilutive of that mark; or
> (III) is a trademark, word, or name protected by reason of section 706 of Title 18 or
> section 220506 of Title 36.

15 U.S.C. § 1125(d)(1)(A).  Thus, in the case of a distinctive mark, a plaintiff successfully

asserts a claim under the ACPA if the plaintiff shows that "(1) its marks were distinctive at the

time the domain name was registered; (2) the infringing domain names complained of are

identical to or confusingly similar to plaintiff's mark; and (3) the infringer has a bad faith intent

to profit from that mark." Webadviso v. Bank of Am. Corp., 448 F. App'x 95, 97 (2d Cir. 2011)

(citing 15 U.S.C. § 1125(d)(1)(A)).  Defendant argues Curated Works' third cause of action fails

4

because Curated Works failed to adequately allege the third element of a Section 1125(d)(1)(A)

claim — bad faith intent to profit from the mark.  See Def. Mem. at 4-8; Reply 2-6.  In assessing

whether a person has bad faith intent to profit, "a court may consider factors such as, but not

limited to"

> (I) the trademark or other intellectual property rights of the person, if any, in the domain name;
> (II) the extent to which the domain name consists of the legal name of the person or a name that is otherwise commonly used to identify that person;
> (III) the person's prior use, if any, of the domain name in connection with the bona fide offering of any goods or services;
> (IV) the person's bona fide noncommercial or fair use of the mark in a site accessible under the domain name;
> (V) the person's intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site;
> (VI) the person's offer to transfer, sell, or otherwise assign the domain name to the mark owner or any third party for financial gain without having used, or having an intent to use, the domain name in the bona fide offering of any goods or services, or the person's prior conduct indicating a pattern of such conduct;
> (VII) the person's provision of material and misleading false contact information when applying for the registration of the domain name, the person's intentional failure to maintain accurate contact information, or the person's prior conduct indicating a pattern of such conduct;
> (VIII) the person's registration or acquisition of multiple domain names which the person knows are identical or confusingly similar to marks of others that are distinctive at the time of registration of such domain names, or dilutive of famous marks of others that are famous at the time of registration of such domain names, without regard to the goods or services of the parties; and
> (IX) the extent to which the mark incorporated in the person's domain name registration is or is not distinctive and famous within the meaning of subsection (c).

15 U.S.C. § 1125(d)(1)(B)(i).  A court "need not . . . march through the nine factors seriatim

because the ACPA itself notes that use of the listed criteria is permissive."  Virtual Works, Inc.

v. Volkswagen of Am., Inc., 238 F.3d 264, 269 (4th Cir. 2001).  Rather, "[t]he most important

grounds for" determining whether a plaintiff "acted with a bad faith intent [to profit] . . . are the unique circumstances of this case, which do not fit neatly into the specific factors enumerated by Congress but may nevertheless be considered under the statute." Sporty's Farm L.L.C. v. Sportsman's Market, Inc., 202 F.3d 489, 499 (2d Cir. 2000). The Second Circuit has expressly noted that "'bad faith intent to profit' are terms of art in the ACPA and hence should not necessarily be equated with 'bad faith' in other contexts." Id. at 499 n.13.

A. Statutory Factors

We are not required to analyze the statutory factors, given that they are merely "permissive." Virtual Works, Inc., 238 F.3d at 269; accord Gioconda Law Grp. PLLC v. Kenzie, 941 F. Supp. 2d 424, 433 (S.D.N.Y. 2013) ("[A] number of courts — including the Second Circuit — have departed from strict adherence to the statutory indicia and relied expressly on a more case-specific approach to bad faith.") (internal citation omitted). Nonetheless, we will examine their application here. As one case has noted, "[t]he first four factors suggest circumstances tending to indicate an absence of bad faith intent to profit from the goodwill of the mark, the next four tend to indicate that such bad faith does exist and the last factor points in either direction, depending on the degree of distinctiveness and fame of the mark." Gioconda Law Grp., 941 F. Supp. 2d at 436 (internal quotation marks omitted) (quoting 4 McCarthy on Trademarks and Unfair Competition § 25:78 (4th ed.)).

When applied to the allegations of Curated Works' complaint, a few of the factors are consistent with the possibility of bad faith but the vast majority strongly suggest there is no bad faith intent to profit.

6

We assume for purposes of this motion that Curated Works has the trademark rights it alleges, and that defendant has no intellectual property rights in the domain name.  Thus factor I favors Curated Works.  Factor II favors defendant because Curated Works concedes that the domain name in fact matches the defendant's brand name, "Curated," a name that is promoted on defendant's "social media webpages."  Compl. ¶ 5(b).  Factor III likely favors Curated Works because there is no allegation regarding whether the defendant previously used the domain name to offer goods and services.  There is no information on factor IV — defendant's noncommercial or fair use of the mark — and thus this factor does not affect our analysis.

Factors V, VI, VII, and VIII, however, all suggest a lack of bad faith.  As for factor V, although the complaint alleges "internet users are routinely referred" to the Curated URL rather than Curated Works' website, Compl. ¶ 39, it does not allege facts showing that the defendant had an "intent to divert" Curated Works' customers to the Curated URL "by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site," 15 U.S.C. § 1125(d)(1)(B)(i)(V).  Factor VI finds bad faith where there is an offer to sell the website name to the plaintiff — an allegation never made in the complaint.  As to factor VII, there is no allegation that defendant used false contact information when registering the Curated URL.  Finally, there is no allegation that defendant registered "multiple" domains of others "without regard to the goods or services of the parties," as contemplated by factor VIII.  15 U.S.C. § 1125(d)(1)(B)(i)(VIII).

It is unclear how factor IX applies here given that there is no allegation that the mark is famous and the parties have not briefed the question of whether the mark is descriptive, and thus

not inherently distinctive.  See generally Genesee Brewing Co., Inc. v. Stroh Brewing Co., 124

F.3d 137, 142-143 (2d Cir. 1997).

In sum, the factors largely favor the defendant.  Certainly, our consideration of the nine

factors involves a qualitative not a quantitative analysis, though some courts have noted the

paucity of factors favoring a plaintiff in their decisions dismissing claims under the ACPA.  See

Gioconda Law Grp., 941 F. Supp. 2d at 436 ("Reviewing the factors set forth in the ACPA, the

Court concludes that only two of the nine weigh in favor of a finding of bad faith intent to profit.

That is not enough.").  Of great significance is that the complaint alleges the existence of at most

one of the five factors that "tend to indicate that . . . bad faith does exist" (factor IX).  Id.

(citation and internal quotation marks omitted) (distinguishing first four statutory factors, which

tend to indicate absence of bad faith, and last five factors, which tend to indicate presence of bad

faith).  Of course, we must consider "the unique circumstances of this case, which [may] not fit

neatly into the specific factors enumerated by Congress but may nevertheless be considered

under the statute."  Sporty's Farm, 202 F.3d at 499.  We thus turn to consideration of case law to

assist our analysis.

B.  Case Law

The classic ACPA claim arises where a defendant registers "a domain name of an

established entity in bad faith, and then offer[s] to sell the domain name to the entity at an

exorbitant price."  Target Advert., Inc. v. Miller, 2002 WL 999280, at *10 (S.D.N.Y. May 15,

2002).  However, a complaint also states an ACPA claim where it alleges "a defendant 'intend[s]

to profit by diverting customers from the website of the trademark owner to the defendant's own

website, where those consumers would purchase the defendant's products or services instead of

8

the trademark owner's.'" Gioconda Law Grp., 941 F. Supp. 2d at 434 (citation omitted); see also

Webadviso, 448 F. App'x at 98 (defendant "ran afoul of the ACPA" because regardless of

"whether or not he had any intention of selling the domain names to [plaintiffs], he clearly had

the intention to profit from the goodwill associated with the trademarks that comprised the

domain names.  His business model relied upon diverting internet users (presumably, among

others, those who were attempting to access the websites of [plaintiffs]) to his own website.");

Target Advert., 2002 WL 999280, at *10 ("[I]t would be logically inconsistent for the [ACPA] to

prohibit the unlawful registration or use of a domain name in order to profit through its sale, but

permit the unlawful registration and use of a domain name in order to profit through its use.").

       However, as one court has noted, "[t]he ACPA is not an all-purpose tool designed to

allow the holders of distinctive marks the opportunity to acquire any domain name confusingly

similar to their marks."  Gioconda Law Grp., 941 F. Supp. 2d at 437 (citation omitted).   Rather,

an ACPA claim must be based on allegations that a defendant "perpetrated the core activities that

threaten to result in the paradigmatic harm that the ACPA was enacted to eradicate," which is,

"the proliferation of cybersquatting — the Internet version of a land grab."  Lewittes v. Cohen,

2004 WL 1171261, at *8 (S.D.N.Y. May 26, 2004) (citation and internal quotation marks

omitted).  Thus, where "the allegations in the Complaint regarding the defendants' use of the

domain name simply show another aspect of the alleged trademark infringement, rather than an

attempt to profit specifically from 'squatting' on the domain name with bad faith," an ACPA

claim must be dismissed.  Kaplan, Inc. v. Yun, 16 F. Supp. 3d 341, 351 (S.D.N.Y. 2014)

(dismissing ACPA claim where complaint alleged "that the defendants registered a 'confusingly

similar' domain name 'with the bad faith intent to profit' and 'with full knowledge of Plaintiffs'

exclusive rights in the MANHATTAN PREP mark.'"); see also Small Bus. Bodyguard, Inc. v. House of Moxie, Inc., 2014 WL 5585339, at *6 (S.D.N.Y. Oct. 30, 2014) (dismissing ACPA claim where complaint stated "merely that [defendant] created a website with a confusingly similar name to [plaintiff's] website in order to sell their jointly created e-book.").

Certainly, the complaint alleges that "defendant had, and continues to have, bad faith intent to profit from its registration and use of the" Curated URL.  Compl. ¶ 76.  But this is "a legal conclusion couched as a factual allegation," which we "are not bound to accept as true" for the purposes of deciding this motion.  Papasan v. Allain, 478 U.S. 265, 286 (1986).  The complaint also alleges that "[d]efendant's registration and use of the curated.com domain name violates plaintiff's rights as the owner of its CURATED Trademarks in that the subject domain name is confusingly similar to plaintiff's CURATED Trademarks," Compl. ¶ 75, and that "[d]efendant willfully and intentionally operates the domain curated.com with reckless or willful disregard of plaintiff's rights in the CURATED Trademarks," id. ¶ 77.  However, these allegations "simply show another aspect of the alleged trademark infringement, rather than an attempt to profit specifically from 'squatting' on the domain name with bad faith," and thus do not support an ACPA claim.  Kaplan, 16 F. Supp. 3d at 351; accord Zimmerli Textil AG v. Kabbaz, 2015 WL 5821523, at *5 (E.D.N.Y. Sept. 30, 2015) ("A plaintiff must show that the defendant's use of the domain name is 'an attempt to profit specifically from 'squatting' on the domain name with bad faith,' rather than 'simply . . . another aspect of the alleged trademark infringement.'") (quoting Flat Rate Movers, Ltd. v. FlatRate Moving & Storage, Inc., 104 F. Supp. 3d 371, 382 (S.D.N.Y. 2015)); Small Bus. Bodyguard, 2014 WL 5585339, at *6 ("Here, as

in <u>Kaplan</u>, [plaintiff's] cybersquatting claim 'simply show[s] another aspect of the alleged
trademark infringement. . . .'") (quoting <u>Kaplan</u>, 16 F. Supp. 3d at 351).

 The complaint alleges that "defendant is engaged in . . . advanced SEO practices to
promote its infringing use of the CURATED Trademarks. . . ." Compl. ¶ 38.  This allegation
certainly shows an intent to "profit from the mark" but does nothing to show "bad faith" intent to
profit from the mark.  Curated Works also alleges that "[a]s a result of defendant's
conduct . . . [Curated Works] has been 'delisted' from the first-level position in Google searches
for the term "Curated," and that "[i]nternet users are routinely refereed, not to [Curated Work's]
website, but to the goods and services offered by defendant or its collaborators." <u>Id.</u> ¶ 39.
Again, while this allegation certainly shows a "intent to profit" from the use of the mark, it too
does not show "bad faith intent."  Thus, this is not a case where it is alleged the defendant
"intend[s] to profit by diverting customers from the website of the trademark owner to the
defendant's own website, where those consumers would purchase the defendant's products or
services instead of the trademark owner's." <u>Gioconda Law Grp.</u>, 941 F. Supp. 2d at 434 (citation
and internal quotation marks omitted).  By alleging merely that customers are being diverted
from Curated Works' website to the Curated URL as a result of the alleged infringement, rather
than alleging facts showing deliberate attempts by defendant to draw away Curated Works'
customers, this allegation does not show bad faith.

 In the end, to state an ACPA claim, there must be an "attempt to profit specifically from
'squatting' on the domain name." <u>Kaplan</u>, 16 F. Supp. 3d at 351.  Put another way, allegations
that web customers are being driven to defendant's website because of the defendant's trademark
infringement do not state a cybersquatting claim absent "any allegation that defendant[] intended

to divert business from any site the plaintiff . . . maintain[s]." Lewittes, 2004 WL 1171261, at *8; accord Kaplan, 16 F. Supp. 3d at 351 (S.D.N.Y. 2014) ("The allegation that the defendants infringed the plaintiff['s] trademark in registering and using a confusingly similar domain name, in and of itself, is insufficient to establish the 'bad faith intent to profit' under the ACPA."). Thus, Curated Works has failed to allege bad faith intent to profit.

None of the cases cited by Curated Works alters this conclusion.  Neither Mobil Oil Corp. v. Pegasus Petroleum Corp., 818 F.2d 254, 259 (2d Cir. 1987), nor Stern's Miracle-Gro Prods., Inc. v. Shark Prods., Inc., 823 F. Supp. 1077, 1088 (S.D.N.Y. 1993), is an ACPA case. And because "'bad faith intent to profit' are terms of art in the ACPA and hence should not necessarily be equated with 'bad faith' in other contexts," any discussion of what constitutes "bad faith" in either of those non-ACPA cases is not instructive here.  Sporty's Farm, 202 F.3d at 499 n.13.

In Mashantucket Pequot Tribe v. Redican, 403 F. Supp. 2d 184 (D. Conn. 2005), the court found bad faith intent to profit where the defendant offered to sell the infringing domain name to plaintiff for $20,000,000.  Id. at 196.  As already noted, allegations that a defendant registered "a domain name of an established entity in bad faith, and then offer[ed] to sell the domain name to the entity at an exorbitant price" are archetypal allegations sufficient to support bad faith intent to profit under the ACPA.  Target Advert., 2002 WL 999280, at *10.

In Rolex Watch U.S.A., Inc. v. Agarwal, 2012 WL 12886444 (C.D. Cal. Dec. 17, 2012), the defendant, inter alia, engaged in so-called "warehousing" by registering six different domain names incorporating the plaintiff's marks — marks that were described as "some of the most famous marks in the world."  Id. at *1.  The "registration or acquisition of multiple domain

names," an allegation that is absent here, is one of the statutory factors used to assess bad faith

intent to profit under 15 U.S.C. § 1125(d)(1)(B)(i)(VIII).[2]

IV.  CONCLUSION

      For the forgoing reasons, defendant's motion to dismiss (Docket # 9) should be granted

as to Curated Works' third cause of action.[3]

**PROCEDURE FOR FILING OBJECTIONS TO THIS
REPORT AND RECOMMENDATION**

      Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil

Procedure, the parties have fourteen (14) days (including weekends and holidays) from service of

this Report and Recommendation to file any objections.  See also Fed. R. Civ. P. 6(a), (b), (d).  A

party may respond to any objections within 14 days after being served.  Any objections and

responses shall be filed with the Clerk of the Court.  Any request for an extension of time to file

objections or responses must be directed to Judge Kaplan.  If a party fails to file timely

objections, that party will not be permitted to raise any objections to this Report and

---

    [2]  To the extent Rolex Watch might be read to hold that the plaintiff's allegation that defendant "acted in bad faith with the intent to profit from the goodwill of the famous ROLEX trademark," Rolex Watch, 2012 WL 12886444, at *13, was by itself sufficient to state a cybersquatting claim, we respectfully disagree given Iqbal's command that we not accept as true "[t]hreadbare recitals of a cause of action's elements, supported by mere conclusory statements," Iqbal, 556 U.S. at 678 (citation omitted).  Indeed, the only case cited by Rolex Watch in accepting such an argument, Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc., 561 F.3d 1298, 1308-09 (11th Cir. 2009), was decided several months before Iqbal.  To the extent E. Gluck Corp. v. Rothenhaus, 585 F. Supp. 2d 505, 520 (S.D.N.Y. 2008), may similarly be read to so hold, we disagree with that decision for the same reason.

    [3]  Curated Works requests leave to amend in the event the Court dismisses its ACPA claim.  Pl. Mem. at 11-12.  Given that the case as a whole is not being dismissed, it is not necessary to decide whether leave to amend should be granted.  Curated Works retains whatever rights it may have to move to amend under Fed. R. Civ. P. 15.

Recommendation on appeal.  <u>See</u> 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; Fed. R. Civ. P. 6(a),

(b), (d); <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Wagner & Wagner, LLP v. Atkinson, Haskins,</u>

<u>Nellis, Brittingham, Gladd & Carwile, P.C.</u>, 596 F.3d 84, 92 (2d Cir. 2010).


Dated: May 12, 2020
        New York, New York

                                          _____
                                          GABRIEL W. GORENSTEIN
                                          United States Magistrate Judge

14